IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JUDY MARIE SMITH                                                                PLAINTIFF

V.                                                             CIVIL ACTION NO.4:12CV105-SAA

CAROLYN W. COLVIN[1],
COMMISSIONER OF SSA                                                          DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the applications of plaintiff Judy Marie Smith for period of disability (POD), disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI. Docket 9, p. 192-198, 199-202. Smith filed her applications on May 5, 2009, asserting an onset date of October 6, 1999. *Id*. However, pursuant to a Work Activity Report, the recommended onset date for her POD and DIP applications was April 11, 2009, the date she last worked. Docket 9, p. 231. The Commissioner denied her claim initially and on reconsideration. Docket 9, pp. 55-58, 73-82, 85-88. Plaintiff challenged the denial of benefits and filed a request for a hearing before an Administrative Law Judge (ALJ). Docket 9, pp. 8-9. The hearing was finally

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Rule 25(d) of the Federal Rules of Civil Procedure allows the substitution of Colvin for Michael J. Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205 of the Social Security Act, 42 U.S.C. §405(g).

conducted on March 2, 2011 by video with the ALJ presiding over the hearing from Wisconsin; the plaintiff, not represented by counsel, attending the hearing in Mississippi; and the vocational expert (VE) testifying via telephone. Docket 9, pp. 9-54. The ALJ issued an unfavorable decision on April 12, 2011. Docket 9, p. 59-68. The plaintiff retained counsel and timely filed a request for review with the Appeals Counsel on May 27, 2011. Docket 9, p. 8. The Appeals Council denied her request for review. Docket 9, p. 1-5. Plaintiff filed this appeal, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on September 6, 1968 and was forty-two years old on the date of the ALJ's hearing decision. Docket 11, p. 19. She has 11th grade education. Docket 9, p. 244. She was previously employed as a cashier, construction flagger, housekeeper, and waitress. Docket 9, p. 238, 244-251. She claimed disability due to "acute pancreatitis, complications from broken neck"(Docket 9, p. 237), pain and pressure and numbness in her hands (Docket 9, p. 237), carpal tunnel syndrome (Docket 9, p. 18), and neuropathy in both arms and elbows (*Id*.). The ALJ determined that plaintiff suffers from "severe" impairments of "status post fractured neck" but found that her carpal tunnel syndrome (CTS) was non-severe. Docket 9, pp. 64, 65, Finding No. 3. Despite finding she had a severe impairment, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). Docket 9, p.65, Finding No. 4. Relying on the evidence in the record and the

2

opinion of the state agency physician, Dr. Glenn James, along with the plaintiff's testimony, the ALJ concluded that plaintiff retained the residual functional capacity [RFC] to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that use of the dominant hand is limited to serving as a "helping hand."

Docket 9, p. 65, Finding No. 5. The ALJ specifically emphasized that the

> above residual functional capacity assessment is supported by the substantial weight of the evidence; the fact that the claimant has received only conservative treatment; the fact that the diagnostic evidence does not support the degree of pain and limitation alleged by the claimant; that fact that the claimant's last job ended for reasons other than an impairment; and the fact that no treating physician opined the claimant is disabled.

Docket 9, p. 67.

Relying on the testimony of a vocational expert ("VE"), the ALJ held that plaintiff's "severe" impairments prevented her from returning successfully to her past relevant work. Docket 9, p. 67, Finding No. 6. The ALJ then found that considering the plaintiff's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that the plaintiff is capable of performing. Docket 9, p. 67, Finding No. 10. Examples of these jobs included an assembler. Docket 9, p. 68. The VE testified that approximately 14,500 of these jobs exist in Wisconsin. Docket 9, p. 30. Accordingly, the ALJ determined that the plaintiff was not disabled as defined by the Social Security Act. Docket 9, p. 68. Finding No. 11.

The plaintiff requested review by the Appeals Council. Docket 9, p. 8. After reviewing the record, including a letter from plaintiff's counsel in this case, who was retained after the unfavorable decision was issued, the Appeals Council denied plaintiff's request for review stating there was no reason to review the ALJ's decision. Docket 9, p. 1. Plaintiff appeals to

3

this court claiming (1) the ALJ's determination at Step 2 failed to consider all plaintiff's medically determined severe impairments and was therefore deficient, (2) the ALJ failed to fully develop the record in light of plaintiff's unrepresented status which resulted in an erroneous and unsupported RFC assessment, (3) the ALJ failed to meet his burden at Step 5, and (4) the ALJ erred in relying on VE testimony which was erroneous. Docket 13, p. 1.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).

---

[7]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[8]20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).

[9]*Muse*, 925 F.2d at 789.

[10]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

1. <u>Jurisdiction and Applicable Law</u>

As an initial matter, the court must address the procedural history in this case. The Social Security Administration holds hearings in all 50 states, the District of Columbia, and several other affiliated locations. 20 C.F.R. §404.936(b). "In setting the time and place of the hearing, [the SSA considers] the following:

> (1) We will consult with the administrative law judge to determine the status of case preparation and to determine whether your appearance, or the appearance of any other party to the hearing, will be made in person or by video teleconferencing. The administrative law judge will determine that your appearance, or the appearance of any other party to the hearing, be conducted by video teleconferencing if video teleconferencing equipment is available to conduct the appearance, use of video teleconferencing to conduct the appearance would be more efficient than conducting the appearance in person, and the administrative law judge determines that there is no circumstance in the particular case that prevents the use of video teleconferencing to conduct the appearance. You or any other party to the hearing may request to appear at the hearing by telephone. The administrative law judge will allow you or any other party to the hearing to appear by telephone if the administrative law judge determines that extraordinary circumstances prevent you or the other party who makes the request from appearing at the hearing in person or by video teleconferencing.

20 C.F.R. § 404.936(c).  Plaintiff filed her applications while she was a resident of Mississippi. Docket 9, pp. 192-202.  It appears that the hearing in this case was initially set for a hearing on December 1, 2010 in Tupelo, Mississippi [Docket 9, p. 108-116], but on November 16, 2010, the hearing was reset to be held on December 13, 2010 in Milwaukee, Wisconsin.  Docket 9, pp. 123-130.

Although the record is not clear, plaintiff apparently moved to Wisconsin some time before October 2010,[12] but had returned to Mississippi to live with her son by December 2010. There is only one change of address form in the record that reflects that plaintiff resided with her father in Pontotoc, Mississippi as of 9/29/09.  Docket 9, p. 98.  The record also reflects a phone call to SSA from the plaintiff on December 2, 2010, alerting SSA to her change of address back to Mississippi, stating that ALJ Hart agreed that the hearing could be done telephonically, acknowledging that there were outstanding medical records that were not in the hearing record, and stating that an authorization would be sent to plaintiff to be able to obtain the additional medical records.  Docket 9, p. 284.  The plaintiff did not attend the December 13, 2010 hearing[13], but spoke with the ALJ via telephone and another hearing was set for January 27, 2011, again in Milwaukee, Wisconsin.  Docket 9, pp. 44-54, 143-147.  Plaintiff did not attend the January hearing and it was later reset as a video conference, with the plaintiff attending in person from the McCoy Federal Building in Jackson, Mississippi, the ALJ in Milwaukee, Wisconsin and the

---

[12] When plaintiff visited the Emergency Room and Dr. Lillie in Wisconsin.  Docket 9, p. 493.

[13] Plaintiff contacted the hearing office and informed them she would be unable to attend the December 13, 2010 hearing and it was rescheduled for January 27, 2011.  Docket 9, pp. 41, 46-54.

7

VE on the telephone from Wisconsin. Docket 9, pp. 41, 160-166, Finally another hearing was set for March 2, 2011, again via video conference with the ALJ in Wisconsin and the plaintiff in Jackson, Mississippi.[14] Docket 9, pp. 9-54, 172-180. Plaintiff appeared at this last video conference from Greenville, Mississippi, the ALJ was in Milwaukee, Wisconsin and the VE participated via telephone from Wisconsin. Docket 9, p. 11.

Plaintiff was never represented by counsel before or at any hearing. During the relevant hearing she did not have access to her medical records or any records in this case because they were at her brother's house in Wisconsin, and she had been unable to retrieve them. Docket 9, pp. 13-15. Plaintiff was a resident of Saltillo, Mississippi at the time of her request for review of hearing decision and hearing (Docket 9, p. 8) and was a resident of Washington County, Mississippi when she filed her appeal to this court. Docket 1.

Title 42 U.S.C. §405(g) relates to judicial review of social security claims. Under this section,

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. *Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.*

42 U.S.C.A. § 405 (2013)(emphasis added). Jurisdiction is proper in this court, and the law of this court, the state and circuit in which the plaintiff has resided except for a brief period, is

---

[14]The court notes that the fifth Notice of hearing – the second notice that is scheduled to be held by video conference – was the first time that plaintiff was provided specific information relating to the use of Video Teleconferencing at the hearing. Docket 9, p. 173.

8

applicable.

		2.	Duty of the ALJ to Fully Develop the Record

The Fifth Circuit has made clear that when a social security claimant is not represented by counsel at the hearing, "the ALJ [i]s under a heightened duty to scrupulously and conscientiously explore all relevant facts." *Castillo v. Barnhart*, 325 F.3d 550, 552–53 (5th Cir.2003). Here, then, the ALJ had a heightened duty to examine and develop the record before he made a decision on plaintiff's claim for benefits. *See Knox v. Astrue*, 660 F. Supp. 2d 790, 810 (S.D. Tex. 2009). In reviewing the Commissioner's decision, a federal court considers only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports his decision. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994). A court will reverse the ALJ's decision as not supported by substantial evidence if the plaintiff shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff. *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir.1996).

In this case, it is clear from the record that this unrepresented plaintiff was unsure of the process for obtaining and submitting medical records. Docket 9, pp. 36-37. She told the ALJ that she had seen Dr. Lillie in Wisconsin after a visit to the Emergency Room, and Dr. Lillie's report corroborates the plaintiff's ER visit, yet no such medical records are in the file. Docket 9, pp. 36-37, 493.

The ALJ found, at step 4 of the sequential evaluation process, that plaintiff retained the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that use of the dominant hand is limited to serving as a 'helping hand'" Docket 9, p.65, Finding No. 5. In support of this finding, the ALJ assigns significant weight to a 1-page Medical Consultant

Review assessment from State Agency physician Dr. Glenn James that indicated plaintiff's "acute pancreatitis, CTS and status post cervical fusion would not meet the durational requirement." Docket 9, p. 67. The ALJ held that this assessment "clearly demonstrates that acute pancreatitis and CTS did not meet the durational requirement. However, the evidence indicates that the claimant's status post cervical fusion did meet the durational requirement and the condition has resulted in functional limitations." *Id.* He went on to support his conclusions by stating that, "no treating physician had opined that the claimant is disabled." *Id.* Although the ALJ was technically correct that no treating physician determined plaintiff disabled, the record was incomplete, and the ALJ himself found that the medical assessment to which he assigned "significant weight" in reaching his RFC finding was at a minimum partially incorrect in its conclusion that the post status cervical fracture did not meet the durational requirement. Further, Dr. James, the agency physician who completed the partially correct medical assessment, made his assessment on the records in the file only six weeks after plaintiff filed her application for benefits, and he never examined the plaintiff.

It is clear from the record in this case, that the plaintiff's unrepresented status served to diminish her case. *See. Chandler v. Astrue*, Civil Action No. 1:10cv60-SAA, 2010 WL 4362853 *4 (N. D. Miss. Oct. 27, 2010). She was obviously confused about the procedure for supplementing medical records: she stated during the hearing in December 2010 that she had more recent medical records but was not aware of a computer CD relating to the records currently in the file because all of her information was at her brother's house in Wisconsin, and the Social security Administration communications were also being sent to his address. Docket 9, pp. 49-54. The ALJ agreed to adjourn the December 2010 hearing and reset it at a later date

and time via video conferencing. Docket 9, p. 54. Thereafter, at the March 2011 hearing, the plaintiff again asked about submitting additional medical records and stated, "Okay then, so how will I know when you get the thing from Dr. Lily[sic]?" Docket 9, p. 38. The ALJ responded, "I don't think you will, you'll – I'll mention it in my decision whether or not we receive it." Docket 9, p. 37. Although the record does contain that the medical records from Dr. Lillie, the records from the Hospital Emergency Room in Wisconsin were never obtained.

"Without reports from qualified medical experts, a court cannot determine the effects of a claimant's conditions, no matter how small, on her ability to perform work; consequently, without reports from qualified medical experts, the court cannot agree that substantial evidence supports the conclusion that a claimant is not disabled." *Parmer v. Commissioner of Social Security,* 2008 WL 4239561, *4 (E.D. Tex., Tyler Div. Sept. 8, 2009), citing *Ripley v. Chater,* 67 F.3d 552, 557, n. 27 (5th Cir.1995); *See also Chandler v. Astrue*, 1:10CV060-SAA, 2010 WL 4362853 (N.D. Miss. Oct. 27, 2010). In this case, there is outstanding medical evidence from the plaintiff's emergency room visit in October 2010. The ALJ made no effort to obtain this information despite the plaintiff's clearly informing him of its existence and plaintiff's obvious confusion regarding the process for obtaining medical records. Finally, the ALJ's RFC finding is based almost entirely on the 1-page medical assessment that the ALJ himself found was partially incorrect. Simply put, the court cannot determine that this finding is supported by substantial evidence.

  3. <u>ALJ's Improper Use of the Severity Standard at Step 2 of the Sequential Evaluation Process in Finding Plaintiff's Carpal Tunnel Syndrome was Non-Severe</u>

The plaintiff argues that the ALJ improperly found that plaintiff's carpal tunnel syndrome (CTS) was a non-severe impairment. In the Fifth Circuit, the law requires an ALJ to consider

11

all impairments, singly and in combination, when determining whether an individual is disabled. *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000); 20 CFR §§404.1523, 416.923, SSR 88-3c, SSR 85-28 and 96-8p. According to Social Security Regulations, a severe impairment is one "which significantly limits [a plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The Circuit has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985). Instead, "an impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir.1985), *cited in Loza v. Apfel,* 219 F.3d 378, 391 (5th Cir.2000). Further, the Circuit requires that the Commissioner apply this severity standard, with either direct citation to the regulations [20 CFR 404.1521 and 416.921] or reference to the *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) decision, or both. Failure to refer to these standards may be reversible error. *See, e.g., Sanders v. Astrue*, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008).

In this case, the ALJ's finding that the plaintiff "has non-severe impairments including acute pancreatitis and carpal tunnel syndrome (CTS)."[15] Docket 9, p. 65. After *Stone*, the Fifth Circuit has held that a district court need not remand a case simply because the ALJ did not use "magic words," but remand *is* required where there is no indication the ALJ applied the correct standard. *White v. Astrue*, 2009 WL 763064 (N.D. Tex. Mar. 23, 2009), citing *Hampton v.*

---

[15]The undersigned in aware that the ALJ does cite to "20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p" in the Applicable law section of his decision. Docket 9, p. 63.

12

*Bowen,* 785 F.2d 1308, 1311 (5th Cir.1986). The ALJ in this case made no reference to the proper regulations, non-severity standard or *Stone v. Heckler*; accordingly, and in light of the other glaring gaps in the ALJ's findings, the court finds that the case must be remanded for proper review under applicable regulations and standards. *See e.g. Sanders v. Astrue*, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008).

    4.    <u>Plaintiff's Remaining Claims</u>

Because this action is being remanded for additional consideration and further development of the record, specifically to obtain the medical records from plaintiff's October 2010 hospital emergency room visit and for assessment under applicable legal standards, the court need not address the merits of the plaintiff's remaining arguments at this time.

## IV. CONCLUSION

After thoroughly reviewing the evidence presented to the ALJ and to the Appeals Council and the record as a whole, the court holds that the ALJ's opinion was not supported by substantial evidence. The case is remanded to the to the Commissioner for further consideration. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 3rd day of July, 2013.

                                                      /s/ S. Allan Alexander
                                                   UNITED STATES MAGISTRATE JUDGE